UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATHERINE MARIE S.,

                              Plaintiff,

v.                                                    6:18-cv-00233
                                                      (TWD)
COMM'R OF SOC. SEC.,

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

LEGAL AID SOCIETY OF                  ELIZABETH V. KRUPAR, ESQ.
MID-NEW YORK, INC.
Attorneys for Plaintiff
221 South Warren Street, Suite 310
Syracuse, NY 13202

GRANT C. JAQUITH                      HEETANO SHAMSOONDAR, ESQ.
U.S. Attorney for the                 Special Assistant U.S. Attorney
Northern District of New York
Attorney for Defendant
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL             STEPHEN P. CONTE, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

        Plaintiff Katherine Marie S. brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or

"Defendant") denying her application for disability insurance benefits.  (Dkt. No. 1.)  The parties

consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. (Dkt. No. 4.) Both parties have filed briefs. (Dkt. Nos. 9, 12.) Oral argument was not heard. For the reasons discussed below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on January 19, 1967. (Administrative Transcript at 337.[1]) She completed high school and has an Associate's Degree in Computer Science. (T. 184-85.) She previously worked as a computer programmer and office manager, and she owned her own plowing and landscaping company. (T. 185, 368.) At the initial application level, Plaintiff alleged disability due to diabetes, depression, anxiety, and arthritis. (T. 367.) At her hearing, Plaintiff also alleged disability due to degenerative disc disease in her lumbar spine. (T. 189.) She stopped working in December of 2012 due to her conditions and tried to work in the Spring of 2014, but could not do it. (T. 187-89, 202-03.) Her application indicates she stopped working in January 2014. (T. 367.)

On February 18, 2014, Plaintiff filed an application for disability benefits, alleging an onset date of June 15, 2013. (T. 362.) Plaintiff's application was initially denied on April 14, 2014. (T. 222.) Thereafter, Plaintiff filed a written request for a hearing, which was held on April 28, 2016, by Administrative Law Judge ("ALJ") Bruce S. Fein. (T. 173-212.) On

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system. Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

September 27, 2016, the ALJ issued a written deicison finding Plaintiff was not disabled under the Social Security Act. (T. 10-22.) On January 10, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Plaintiff commenced this action on February 22, 2018. (Dkt. No. 1.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act ("SSA"). 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v.*

---

[2] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

*Yuckert*, 482 U.S. 137, 140-42 (1987). Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner

for adjudicating disability claims.  (T. 10-22.)  In his September 27, 2016, decision, the ALJ

found Plaintiff meets the insured status requirements of the Social Security Act through

December 31, 2014.  (T. 11, 13.)  He found Plaintiff had not engaged in substantial gainful

activity since June 15, 2013, the alleged onset date.  *Id*. at 13.  The ALJ determined Plaintiff has

the following severe impairments: degenerative disc disease ("DDD") of the lumbar spine,

diabetes mellitus with diabetic neuropathy, anxiety disorder, and depressive disorder.  *Id*.  The

ALJ determined Plaintiff did not have an impairment or combination of impairments that meets

or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (T.

14.)  He found Plaintiff has the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b), which involves lifting and/or carry 20 pounds
> occasionally and ten pounds frequently, standing and/or walking
> for six hours in an eight-hour workday, and sitting for six hours in
> an eight-hour workday.  She can occasionally climb, balance,
> stoop, kneel, crouch, and crawl.  Mentally, she retains the ability to
> understand and follow simple instructions and directions; perform
> simple tasks independently and with supervision; maintain
> attention/concentration for simple tasks; regularly attend to a
> routine and maintain a schedule; relate to and interact with others
> to the extent necessary to carry out simple tasks; and handle simple
> work-related stress.

(T. 15.)  The ALJ determined Plaintiff was unable to perform any past work; was defined as a

younger individual age 18-49 on the alleged disability onset date; had at least a high school

education; and was able to communicate in English.  (T. 21.)  At step five, considering Plaintiff's

age, education, work experience, and residual functional capacity, together with the Medical-

Vocational Guidelines, 20 C.F.R. § 404, Subpart P, Appendix 2 (the "Grids"), the ALJ

concluded Plaintiff's postural and mental restrictions would have little or no effect on her

occupation base of unskilled light work and, therefore, found Plaintiff "not disabled" under the

framework of Medical-Vocational Rule 201.21. (T. 21-22.) Thus, the ALJ determined Plaintiff

has not been under a disability, as defined in the Social Security Act, from February 18, 2014,

through the September 27, 2016, decision. (T. 22.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff contends the ALJ erred in finding that Plaintiff's knee and hand impairments

were not severe. (Dkt. No. 9 at 15-17.) Plaintiff also argues the ALJ improperly determined the

RFC which is not supported by substantial evidence because he improperly assessed the medical

opinions, substituted his lay opinion, and did not properly account for Plaintiff's mental

impairments. (Dkt. No. 9 at 17-25.) Plaintiff further argues the ALJ's step five determination is

not supported by substantial evidence. *Id*. at 25-27. In response, the Commissioner contends the

ALJ's decision applied the correct legal standards and is supported by substantial evidence.

(Dkt. No. 12 at 7-17.)

## V.    ANALYSIS

### A.    Severity

At Step Two, the ALJ must determine whether the claimant has a severe impairment that

significantly limits her physical or mental abilities to do basic work activities. 20 C.F.R. §§

404.1520(c), 416.920(c). Basic work activities include walking, standing, sitting, lifting,

carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding,

remembering and carrying out simple instructions, using judgment, and responding appropriately

to supervision, co-workers, and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265

(N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y.

July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this

step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or

impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Id.* (citing *Miller v. Comm'r of Soc. Sec.*, 05-CV-1371 (FJS/GJD), 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing he adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 09-CV-0236 (GLS/VEB), 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), *Report and Recommendation adopted by* 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

Here at Step Two, the ALJ found Plaintiff's DDD of the lumbar spine, diabetes mellitus with diabetic neuropathy, anxiety disorder, and depressive disorder to be severe impairments. (T. 13.) Plaintiff argues the ALJ erred at Step Two in not finding her knee and hand impairments were not severe. (Dkt. No. 9 at 15.) The Court finds this argument unpersuasive for the following reasons.

8

The ALJ found severe impairments at Step Two including severe physical and mental impairments and continued the sequential evaluation. (T. 13.) This analysis included determining the RFC which restricted Plaintiff to light work, including the lifting and carrying restrictions therein, and the imitations that she can occasionally climb, balance, stoop, kneel, crouch, and crawl. (T. 15.) Moreover, the ALJ also made Step Five determinations to complete the sequential analysis. (T. 21-22.)

The ALJ's overall decision reflects a detailed analysis of Plaintiff's physical impairments and related limitations and a detailed analysis of the objective evidence of record. (*Id.* at 15-21.) To be found severe, Plaintiff's knee and hand impairments would need to significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). With regard to her claimed knee impairments, medical records from her primary care provider, Raouf A. Kodsy, M.D., show that she complained of left knee pain in May 2013, just before the alleged onset date. (T. 469.) Physical exam of the knee that day showed some swelling. *Id.* In October 2013, she complained of a lump in her right knee, and xrays completed November 12, 2013, showed mild bone spurring at the patella and the anterior tibial tubercle. (T. 504.) However, exams on November 8, 2013, November 15, 2013, December 9, 2013, December 12, 2013, May 10, 2014, June 24, 2014, and July 1, 2014, when she presented to the office for other chief complaints unrelated to her knees, all show her lower extremities to be normal to inspection and palpation, with functional active range of motion and normal tone and strength, and her gait is stable and appropriate for her age. (T. 453, 455, 459, 463, 710, 713, 715.) On July 15, 2014, she complained of a right knee cyst that was painful, but the exam of her lower extremities was unchanged. (T. 705-06.) She was referred for an orthopedic consult. However, the only orthopedic note in the record is dated June 28, 2013, where Plaintiff presented to John P.

Sullivan, M.D., of the Slocum Dickson Medical Group, with left knee pain.  (T. 617.)  Mild tenderness in the left knee was present on exam, but other testing was negative including xrays of her left knee, and she was prescribed Mobic and told to follow up in six weeks.  (T. 618.)

Consultative examiner Tanya Perkins-Mwantuali, M.D., in an exam on April 4, 2014, noted Plaintiff to have a mild limp on the left with her gait and she could partially squat, however, the range of motion in her knees was full normal, her joints were stable and nontender, and strength was full and equal in her lower extremities.  (T. 530-31.)

As for her hands, Dr. Perkins-Mwantuali found that hand and finger dexterity was intact and grip strength was 5/5 bilaterally.  (T. 532.)  However, Nurse Practitioner ("NP") Susan John of Dr. Kodsy's office, in a source statement, indicated that Plaintiff did have arthritis in her hands and wrists, but she did not have any diabetic motor neuropathy in her hands.  (T. 588, 590.)  NP John noted Plaintiff did not have the ability to grasp large objects with her hands secondary to osteoarthritis, however, treatment notes during the relevant time period from Dr. Kodsy's office indicate Plaintiff made no hand or wrist complaints and examination showed normal tone and 5/5 motor strength in Plaintiff's upper extremities.  (T. 453, 455, 459, 463, 693, 695, 698, 701, 704, 706, 710, 713, 715.)

Thus, the record does not show Plaintiff's knee impairments or hand impairments caused significant functional limitations in Plaintiff's ability to work or imposed limitations beyond those that the ALJ already included in the RFC.  While Plaintiff did have a diagnosis of hand arthritis, and a diagnosis of knee pain, bone spurring and a cyst, such diagnoses are not enough to render the conditions severe.  *Taylor*, 32 F. Supp. 3d at 265 (citations omitted).  For these reasons, the ALJ properly determined Plaintiff's knee and hand impairments non-severe.  Moreover, because the ALJ found at least one other severe impairment, continued with the

sequential evaluation, and provided explanation showing he adequately considered the evidence related to Plaintiff's non-severe impairments, the Court finds any error by the ALJ in finding Plaintiff's knee and hand impairments non-severe to be harmless. Therefore, the Court finds that substantial evidence supports the ALJ's findings at Step Two. As such, remand is not required on this basis.

### B. Residual Functional Capacity

A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id*. (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. *Frey ex rel. A.O. v. Astrue*, 485 F.

App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (quotation marks omitted).

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).  "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. § 404.1527(c)(1)-(6).

### B.       Challenges to the ALJ's RFC Determination

As noted above, the ALJ found Plaintiff has the RFC:

to perform light work as defined in 20 CFR 404.1567(b) and
416.967(b), which involves lifting and/or carry 20 pounds
occasionally and ten pounds frequently, standing and/or walking
for six hours in an eight-hour workday, and sitting for six hours in
an eight-hour workday. She can occasionally climb, balance,
stoop, kneel, crouch, and crawl. Mentally, she retains the ability to
understand and follow simple instructions and directions; perform
simple tasks independently and with supervision; maintain
attention/concentration for simple tasks; regularly attend to a
routine and maintain a schedule; relate to and interact with others
to the extent necessary to carry out simple tasks; and handle simple
work-related stress.

(T. 15.) In reaching this determination, the ALJ afforded great weight to the opinion rendered

by Dr. Perkins-Mwantuali, although he did not accept all of her limitations. (T. 16.) He

assigned Dr. Caldwell's and Dr. Hoffman's opinions some weight. (T. 17.) Although well

before the date of onset, the ALJ also assigned some weight to an assessment from Plaintiff's

April 12, 2007, Faxton-St. Luke's Healthcare emergency department visit that she should avoid

heavy lifting. *Id.* Limited weight was assigned to the opinion of NP John, of Dr. Kodsy's office,

and to the opinions of Walter Miasiaszek, LMSW, and NP Linda Talerico, both of Mental Health

Connections. (T. 17, 18.)

Plaintiff contends that in determining the RFC, the ALJ (1) erroneously assessed the

medical opinions; (2) substituted his own opinion over the medical opinions; and (3) failed to

account for Plaintiff's mental limitations. (Dkt. No. 9 at 17-25.)

## C. Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

As an initial matter, the ALJ's decision includes detailed consideration of the medical

opinions and related treatment notes, consistent with the requirements of 20 C.F.R. § 404.1527.

(T. 15-21.) Further, the ALJ adequately considered the various limitations (and lack thereof)

identified in the medical opinions, and sufficiently explained the specific weight he afforded to

each opinion. (T. 16-21.) The ALJ was responsible for reviewing all of the medical and other evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, No. 3:13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, No.7:12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014). Thus, in formulating Plaintiff's RFC, the ALJ was not required to accept every limitation of consultative examiner Dr. Perkins-Mwantuali, nor craft an RFC that mirrored any specific opinion in the administrative record. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."); *Zongos v. Colvin*, No. 5:12-cv-1007 (GLS/ESH), 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion, but not to another portion); *see also Veino v. Barnhart*, 312 F.3d 578, 588-89 (2d Cir. 2002) (ALJ did not err in crediting only a small part of physician's report).

### 1. Dr. Perkins-Mwantuali's Opinion

Plaintiff argues the ALJ should not have rejected certain limitations opined by consultative examiner Dr. Perkins-Mwantuali. (Dkt. No. 9 at 18.) However, an ALJ does not need to adopt all of a consultative examiner's conclusions in order to give great weight to other portions of the opinion. *See Matta*, 508 F. App'x at 56; *Pellam v. Astrue*, 508 F. App'x 87 (2d Cir. 2013) (finding that even if the ALJ did not credit all of the consultant's findings, his opinion largely supported the ALJ's RFC determination). The ALJ's RFC determination for light work

14

is consistent with all relevant findings of Dr. Perkins-Mwantuali that are not contradicted by other medical source evidence. Here, the ALJ gave great weight to Dr. Perkins-Mwantuali's opinion of mild limitations for bending, twisting, kneeling, crawling, squatting and climbing. (T. 16.) The ALJ determined that these limitations were supported by Dr. Perkins-Mwantuali's evaluation of Plaintiff. *Id.* These mild limitations are supported by the findings that Plaintiff needed no help getting on and off the exam table and she was able to rise from her chair without difficulty. (T. 530.) They were further supported by exams of Plaintiff by her primary care provider which show her lower extremities to be normal to inspection and palpation, with functional active range of motion and normal tone and strength, and her gait is stable and appropriate for her age. (T. 453, 455, 459, 463, 710, 713, 715.)

Additionally, the ALJ properly declined to adopt Dr. Perkins-Mwantuali's limitations, including a mild limitation with reaching, that were not consistent with the record as a whole. *See Veino*, 312 F.3d at 588 (an ALJ has discretion to accept or reject various portions of a physician's opinion, based upon substantial evidence in the record). For example, treatment notes during the relevant time period from Dr. Kodsy's office indicate Plaintiff made no hand or wrist complaints and examination showed normal tone and 5/5 motor strength in Plaintiff's upper extremities. (T. 453, 455, 459, 463, 693, 695, 698, 701, 704, 706, 710, 713, 715.)

Moreover, courts in this Circuit have found that "postural limitations of moderate or lesser severity are generally consistent with the demands of light work." *Heidrich v. Berryhill*, 312 F. Supp. 3d 371, 374 n.2 (W.D.N.Y. 2018) (citing to *Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (collecting cases and holding that a RFC for light work sufficiently accounts for moderate postural limitations such as lifting, bending, reaching, pushing, pulling, and/or carrying, even where it "fail[s] to incorporate the moderate

limitation[s] by name.")).  Thus, the ALJ properly evaluated Dr. Perkins-Mwantuali's medical opinion under the Commissioner's regulations and reasonably exercised discretion declining to adopt limitations that were not consistent with the record as a whole.  For these reasons, the ALJ's assessment of Dr. Perkins-Mwantuali's opinion is supported by substantial evidence, and remand is not required on this basis.

### 2.    Dr. Caldwell and Dr. Hoffman

Plaintiff argues the ALJ failed to properly weigh the opinion evidence of mental health consultative examiner Christina Caldwell, Psy.D., and state agency reviewer Dr. Hoffman.  (Dkt. No. 9 at 20-25.)  The Court finds this argument unpersuasive for the following reasons.

As an initial matter, the ALJ was responsible for reviewing all of the medical and other evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole.  *See Bliss v. Colvin*, 2015 WL 457643, at *7 ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such.").  Second, as noted above, the ALJ's decision is not required to perfectly correspond with any of the opinions of medical sources cited in his decision, and he may accept portions of the medical records while rejecting others in order to make an RFC determination that is "consistent with the record as a whole."  *Matta*, 508 F. App'x at 56.  Third, substantial evidence supports the ALJ's assessment of Plaintiff's ability to perform simple work activity that entails handling simple work-related stress.  (T. 15, 17.)

Dr. Caldwell opined that Plaintiff had no limitations in following and understanding simple directions and instructions, and maintaining a regular schedule.  (T. 538.)  She also opined that Plaintiff has mild limitations in her ability to maintain attention and concentration and learn new tasks, and that Plaintiff has moderate limitations in her ability to perform complex

tasks independently and in her ability to appropriately deal with stress. *Id.* Plaintiff contends that the ALJ ignored these limitations and instead substituted his own judgment. (Dkt. No. 9 at 23.)

However, the ALJ fully accounted for these limitations when he limited the Plaintiff to simple work that entails handling only simple work-related stress. (T. 17.) S*ee Wells v. Colvin*, 87 F. Supp. 3d 421, 435-36 (W.D.N.Y. 2015) (moderate limitations, even in the basic mental functions of unskilled work, are not inconsistent with the ability to perform unskilled work). This is further supported by the opinion of Dr. Hoffman who reviewed the record, including Dr. Caldwell's opinion, and opined that Plaintiff could perform simple work. (T. 217.)

A review of other treatment records shows that although depression is noted in Plaintiff's encounters with her primary care providers, Dr. Kodsy and NP John, the records for the relevant time period repeatedly indicate Plaintiff's mood and affect are appropriate, and she is alert and oriented in all spheres. (T. 452, 455, 459, 463, 692, 695, 698, 701, 704, 706, 709, 712, 715.) Mental status exams by the providers at Slocum Dickson Medical Group also repeatedly indicate Plaintiff is oriented appropriately, her judgment and insight are intact, her memory is intact for recent and remote events, and her mood and affect show no depression, anxiety, or agitation. (T. 605, 613, 620, 631-32.) She is found to be an "extremely pleasant patient." (T. 616.) When treated at St. Elizabeth Medical Center for complaints of dizziness and vertigo, Plaintiff had a normal mood and affect, and normal orientation, speech, and cognition. (T. 1075.) At Mental Health Connections, NP Talerico found her cognitively grossly intact. (T. 744.) Plaintiff's insight, judgment, decision-making, and impulse control were intact; her thought processes were organized, and there was no evidence of circumstantial or tangential disorganization of thought or flight of ideas. *Id.* Other notes from Mental Health Connections showed Plaintiff was more

upbeat, with improving judgment, insight, and decision making. (T. 748.) Medication improved her symptoms. (T. 750.) Further mental status exams by NP Talerico showed that Plaintiff was worried, but she had no evidence of depression or extreme anxiety, and she was cognitively intact. (T. 751-52, 757, 761, 766, 771, 775.) NP Sylvia Redmond at Mental Health Connections noted Plaintiff to be doing well psychologically. (T. 776.)

In addition, the opinion of Dr. Hoffman also supports the ALJ's RFC determination for simple unskilled work. Consistent with the treatment records, Dr. Hoffman opined that Plaintiff has only mild limitations in activities of daily living and maintaining social functioning and has moderate limitations in maintaining concentration, persistence or pace. (T. 217.) Adopting these limitations, Dr. Hoffman opined that Plaintiff is capable of performing jobs with simple tasks. *Id.* The ALJ properly accounted for Dr. Hoffman's limitations in his RFC analysis, and contrary to Plaintiff's assertion, the ALJ does not need to provide rationale as to why he rejects or adopts every limitation provided by Dr. Caldwell and Dr. Hoffman. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013), citing *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("Indeed, even if the ALJ was not as explicit in his reasoning on this issue as possible, an ALJ does not have to state on the record every reason justifying a decision, nor is an ALJ required to discuss every piece of evidence submitted.").

The ALJ incorporated Dr. Caldwell's assessment regarding Plaintiff's mild impairment in maintaining attention and concentration, and moderate impairment in dealing with stress by restricting Plaintiff to unskilled work that is limited to simple work activity with simple work-related stress. (T. 17, 538.) "[C]ourts [in the Second Circuit] have routinely held that individuals suffering from 'moderate' difficulties with memory, concentration, and handling stress could reasonably be found to have the residual functional capacity to perform 'simple,

routine and repetitive tasks.'" *Worthy v. Berryhill*, No. 3:15-CV-1762 (SRU), 2017 WL 1138128, at *7 (D. Conn. Mar. 27, 2017); *see, e.g.*, *Smith v. Colvin*, No. 3:14-CV-1752 (SRU), 2016 WL 1170910, at *6 (D. Conn. Mar. 23, 2016) ("when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, limiting claimant to only unskilled work sufficiently accounts for such limitations") (citation omitted); *Steffens v. Colvin*, No. 6:14-CV-06727 (MAT), 2015 WL 9217058, at *4 (W.D.N.Y. Dec. 16, 2015) ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.") (citation and internal quotation marks omitted).

Based on the above, the Court finds the ALJ properly evaluated the opinions of Dr. Caldwell and Dr. Hoffman under the Commissioner's regulations and in declining to adopt limitations that were not consistent with the record as a whole. For these reasons, the ALJ's assessment of those opinions is supported by substantial evidence, and remand is not required on this basis.

### 3. NP Talerico and LMSW Misiaszek

Plaintiff also contends the ALJ erred in weighing the opinions of Walter Misiaszek, LMSW, and NP Linda Talerico of Mental Health Connections. (Dkt. No. 9 at 20, 22-25.) The Court disagrees and finds that the ALJ properly assessed their opinions in giving them limited weight.

First, Mr. Misiaszek, as a licensed social worker, and NP Talerico are not acceptable medical sources. 20 C.F.R. § 416.913. Second, the ALJ noted that their restrictions were not

consistent with their own treatment notes, nor the findings of other medical sources. (T. 18.) NP Talerico opined Plaintiff was unable to work in any capacity and was very limited in maintaining concentration/attention, in interacting with others, in maintaining socially appropriate behavior, and in functioning in a work setting. (T. 587.) LMSW Masiaszek opined Plaintiff was not able to work in any capacity because of instability and frequent upset and also found her very limited in maintaining concentration/attention, in interacting with others, in maintaining socially appropriate behavior, and in functioning in a work setting. (T. 597, 599.)

As noted above, however, NP Talerico found Plaintiff's insight, judgment, decision-making, and impulse control were intact; her thought processes were organized, and there was no evidence of circumstantial or tangential disorganization of thought or flight of ideas. (T. 744.) Other mental status exams by NP Talerico showed that Plaintiff was worried, but she had no evidence of depression or extreme anxiety, and she was cognitively intact. (T. 751-52, 757, 761, 766, 771, 775.) Mr. Misiaszek noted Plaintiff reported being less irritable and had a better attitude, she was less angry. (T. 749, 750, 753.) NP Redmond at Mental Health Connections noted Plaintiff to be doing well psychologically. (T. 776.)

Other providers found Plaintiff mentally stable. For example, mental status exams by the providers at Slocum Dickson Medical Group indicate Plaintiff was an "extremely" pleasant person, who was oriented appropriately; her judgment and insight were intact; her memory was intact for recent and remote events; and her mood and affect showed no depression, anxiety, or agitation. (T. 605, 613, 616, 617, 620, 631-32.)

The Second Circuit has recently made it clear that the ALJ need not afford controlling weight to the opinions of a plaintiff's treating physicians when they are not supported by clinical findings and inconsistent with their own records and treatment notes. *Smith v. Berryhill*, 740 F.

App'x 721, 724 (2d Cir. 2018). The ALJ must give "good reasons" for affording the limited weight. *Id*. (quoting *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998); 20 C.F.R. § 404.1527(c)(2)). Here, I find the ALJ gave good reasons for the weight he gave to the opinions of NP Talerico and LMSW Misiaszek. In *Smith*, the Court also stated "the ALJ was not required to identify evidence explicitly rebutting the opinions of [the claimant's] treating physicians before discounting or rejecting them." *Id*. at 726 (citing *Halloran*, 362 F.3d at 32).

The Court also notes Plaintiff's disagreement with the ALJ's weighing of evidence is not enough to show the ALJ did not base his decision on substantial evidence. Rather, this argument amounts to nothing more than a request for this Court to reweigh the evidence, something that is prohibited by the limited scope of this Court's review. *See Warren v. Comm'r of Soc. Sec.*, 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation* adopted by 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

### 4. Plaintiff's Activities

Additionally, Plaintiff's activities of daily living support the ALJ's determination of her RFC. Plaintiff has no problem caring for her personal needs; she cooks, does laundry with some

help, and engages in hobbies of reading, crochet, plastic canvas, and photography which she does almost daily.  (T. 394-397, 530.)  She has a driver's license, can drive and ride in a car, and go out alone.  (T. 396.)  She is able to do dishes, take care of dogs, get her son off to school, and attend her son's sporting events from time to time.  (T. 206, 398.)  The activities provide further substantial evidence supporting the RFC.

Based on all of the foregoing, the Court finds the ALJ applied the proper legal standards in addressing Plaintiff's mental and physical impairments in the RFC and there is substantial evidence in the record supporting the RFC.  Remand is therefore not required on this ground.

### D.    Substantial Evidence Supports the Step Five Finding

The burden shifts to the Commissioner at Step Five "to show there is other work that [the claimant] can perform."  *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert."  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).  "However, the 'mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the [Medical-Vocational] guidelines.'"  *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603).  "A non-exertional impairment 'significantly limits a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'"  *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 605-06).

After determining the RFC, the ALJ found Plaintiff is unable to perform any past relevant work.  (T. 21.)  The ALJ then found Plaintiff could perform other jobs existing in significant

numbers in the national economy based on the RFC for the full range of light work and Medical-Vocational Rule 202.21. (T. 21-22.) Plaintiff argues the ALJ erred in failing to procure vocational expert testimony because there is a question regarding her abilities when combining her exertional and non-exertional limitations. (Dkt. No. 9 at 25-27.) The Court disagrees.

First, as determined above, the ALJ's RFC finding was supported by substantial evidence and based upon correct legal principles. Thus, the Court finds Plaintiff's argument that the ALJ failed to consider certain nonexertional limitations, including, *inter alia*, her mental limitations, to be without merit. *Id*. at 26-27. Further, the ALJ determined Plaintiff retains the ability to meet all of the exertional demands for light work. (T. 21.) Turning to the nonexertional limitations, the ALJ found that the impact of her postural restrictions had very little effect on the light occupational base. *Id*. at 22; *see* SSR 83-14, 1983 WL 31254, at *5 (SSA 1983) (limitations in climbing, balancing, kneeling, and crawling would not have significant impact to perform most light jobs). Next, the ALJ determined Plaintiff's mental limitations did not limit her ability to perform unskilled light work, including understanding, carrying out, and remembering simple instruction; responding appropriately to supervision; and dealing with work changes. (T. 22); *see Zabala*, 595 F.3d at 411. Under these circumstances, the testimony of a vocational expert or other similar evidence regarding the existence of jobs Plaintiff could perform in the economy was unnecessary. *See Lawler v. Astrue*, 512 F. App'x 108, 112 (2d Cir. 2013).

Here, because the ALJ analyzed whether Plaintiff's nonexertional impairments "significantly eroded" her occupational base, he did not commit legal error by relying on the Medical-Vocational guidelines ("grids") to make his step five determination. *See Hurd v. Astrue*, No. 10-CV-1116 (DNH), 2013 WL 140389, at *4 (N.D.N.Y. Jan. 11, 2013); *see also*

*Bistoff v. Colvin*, No. 1:14-CV-984 (MAT), 2017 WL 2772282, at *6 (W.D.N.Y. June 27, 2017) (collecting cases). Therefore, substantial evidence supports the ALJ's finding that Plaintiff's nonexertional impairments do not significantly reduce her occupational base.

Accordingly, the ALJ's reliance on the grids to provide the framework for determining that Plaintiff's nonexertional limitations were not disabling was correct and the ALJ's step five determining is supported by substantial evidence. (T. at 21-22.) Remand is therefore not required on this ground.

Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the SSA. 20 C.F.R. § 404.1520(g).

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the telephone oral argument scheduled for 5/9/2019 per Dkt. No. 14 is cancelled.

Dated: March 29, 2019
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge